IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| U.S. CLAIMS, INC., et al., | : | CIVIL ACTION |
| Plaintiffs. | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL FLOMENHAFT, et al., | : | |
| Defendants. | : | NO.  2:06-CV-0978-LDD |

MEMORANDUM

Davis, J.                                                                                           June 26 , 2007

Presently before the Court are Defendants' Motion to Dismiss (Doc. No. 51), Plaintiffs' Response in Opposition (Doc. No. 53) and Defendants' Reply thereto (Doc. No. 56).  For the reasons set forth below, Defendants' Motion will be granted in part and denied in part.

Most of the pertinent facts to this dispute have been set forth in two earlier opinions by this Court and thus need not be repeated here.  See Doc. Nos. 27, 40.  On February 26, 2007, this Court dismissed Plaintiffs' declaratory action claim against Defendant the Stillwater Asset-Backed Fund LP ("Stillwater"), explicitly denying Plaintiffs leave to amend upon the finding that amendment would be futile.  In so ruling, the Court held: (1) the security interests in dispute ("Flomenhaft Interests") are "accounts" and not "payment intangibles" under Article 9 of the Uniform Commercial Code (UCC); (2) Plaintiffs' interest did not automatically perfect upon attachment pursuant to UCC § 9-309(2); and (3) Stillwater's perfected secured interest is superior to that of Plaintiffs, as a matter of law.  While the Court denied Plaintiffs leave to amend their declaratory action claim against Stillwater, it nevertheless allowed Plaintiffs to add certain tort claims against Stillwater and against newly-added Defendants Brian Spira and the Oxbridge

1

Group, LLC ("Broker Defendants").  Plaintiffs subsequently filed a Third Amended Complaint.  Stillwater and the Broker Defendants ("Moving Defendants") now move pursuant to Rule 12(b)(6) to dismiss all of the tort claims asserted against them, and to dismiss or strike a number of Plaintiffs' other allegations.

I.      Conversion (Count II)

Plaintiffs claim: (1) Stillwater is liable for conversion in purchasing the Flomenhaft Interests in spite of knowing of Plaintiffs' unperfected security interest in the same assets and (2) the Broker Defendants converted Plaintiffs' property by facilitating Stillwater's acquisition of the Flomenhaft Interests.  The Moving Defendants argue that the conversion claim should be dismissed because it is inconsistent with Article 9 provisions providing for the priority of Stillwater's secured interest over that of Plaintiffs.  Plaintiffs counter that general principles of law and equity are understood to augment the UCC unless displaced by particular UCC provisions: because conversion is not specifically addressed in Article 9 "with respect to the particular type of property or interest at issue," it therefore "supplements and coexists with the UCC."  Pls.' Resp. at 10 (citing UCC § 1-103(b)).

Under New York law, conversion is the unauthorized exercise of dominion or control over property which interferes with and is in defiance to another's "superior right of possession." LoPresti v. Terwilliger, 126 F.3d 34, 41 (2d Cir. 1997); Regions Bank v. Wieder & Mastroianni, P.C., 423 F. Supp. 2d 265, 269 (S.D.N.Y. 2006).  The unauthorized dominion or control must be such as to exclude plaintiff's rights or to alter the condition of the property.  Independence Disc. Corp. v. Bressner, 47 A.D.2d 756, 757 (N.Y. App. Div. 1975).  Money may form the basis for a conversion claim where it is a particular identifiable pool of money that is readily capable of

being segregated.  Pioneer Commercial Funding Corp. v. United Airlines, Inc., 122 B.R. 871, 885 (S.D.N.Y. 1991); Bressner, 47 A.D.2d at 757.

     First, it is abundantly clear that the Broker Defendants are entitled to a dismissal of the conversion claim.  According to Plaintiffs' Third Amended Complaint, Defendant Brian Spira previously worked for Plaintiffs where he was "responsible for procuring, representing and protecting Plaintiffs' interests" with regard to the Flomenhaft purchase agreements.  Am. Compl., ¶ 22.  However, in March 2004, Spira left Plaintiffs to work for Defendant Oxbridge Group.  Id. at ¶ 26.  Subsequently, the Broker Defendants allegedly "brokered the sale of the Flomenhaft Interests ... to Defendant Stillwater" in spite of their knowledge of Plaintiffs' prior-acquired interests.  Id. at ¶¶ 27, 29.  However, from this, it should be readily apparent that the Broker Defendants cannot be liable for conversion since there are no allegations that Spira or Oxbridge ever acquired any rights, at any time, in the assets in dispute.  No conversion action can exist against a defendant who did not exercise any form of dominion or control over the property that was allegedly converted.

     Furthermore, even assuming for purposes of this Motion that Stillwater's taking of a secured interest in the Flomenhaft assets is sufficient to constitute an exercise of "dominion or control" to the exclusion of Plaintiffs' rights, Plaintiffs' claim still cannot survive.  In order to state a valid claim for conversion, plaintiff must be able to show that his interest or right in the property is superior to defendant's.  Fundamentally, however, Plaintiffs' showing on this necessary element is precluded by this Court's prior ruling that Stillwater's perfected security interest is superior to Plaintiffs' unperfected interest as a matter of law.  See Doc. Nos. 27, 40; UCC § 9-322(a)(2).  Plaintiffs' recasting of the claim to allege that the conversion occurred at the

time of Stillwater's secured advance, when Plaintiffs already had a first-in-time unperfected security interest in the assets, does not change the outcome.

Article 9's carefully crafted statutory scheme was intended to institute a bright-line rule in favor of the most diligent creditor without turning every priority dispute into a fact-intensive case-by-case subjective inquiry into what one creditor may or may not have known about another's interests. See UCC § 9-322, cmt. 3 ("[t]he [priority] rules may be regarded as adaptations of the idea, deeply rooted at common law, of a race of diligence among creditors"). The statutes are clear that a creditor's subjective knowledge is entirely irrelevant to determining the relative priority of the competing interests. UCC § 9-322, cmt. 4, ex. 2. Even if the later creditor makes his advance on the same collateral with knowledge of another's prior unperfected competing interest, he will still be awarded priority under Article 9 so long as he is the first to perfect. UCC § 9-325, cmt. 4, ex. 3. Article 9's drafters explained that such a rule "is premised on the belief that [the unsecured creditor's] failure to file could have misled" the subsequent creditor. Id. However, the drafters made clear that whether one was actually misled is immaterial.

The relevant legal framework governing the instant dispute was cogently articulated by the district court in Bucheit v. Palestine Liberation Organization, 2003 WL 24011414, *6-7 (D.D.C. Aug. 15, 2003).[1] In Bucheit, a secured creditor sued general creditors for, *inter alia*, conversion, because the general creditors allegedly took payments from the debtor

---

[1] That Bucheit was decided under the law of the District of Columbia is of no moment: there is no material difference between D.C. and New York law as to what constitutes conversion, Bucheit, 2003 WL 24011414 at *6; and D.C. has adopted the relevant Article 9 provisions at issue in this case, Id. at *7.

notwithstanding the plaintiff's secured interest in the money.  There, the plaintiff creditor obtained a secured interest in certain debtor assets but did not perfect its interest until nearly a year later.  After reviewing the relevant UCC Article 9 provisions relating to attachment, perfection and priority, the Bucheit court determined that because plaintiff did not have superior rights to the debtor assets relative to those of the general creditors during the time when its interest remained unperfected, there could be no claim for conversion premised upon the general creditor's acceptance of payments for that period.  Id. at *7.  However, once plaintiff perfected and thus established its priority of interest, the court concluded that defendants were liable for conversion when they continued to accept payments notwithstanding their inferior interests.  Id.  While the facts in this case are admittedly distinguishable from those in Bucheit, the Court is nevertheless persuaded that whether a conversion claim may be asserted turns on the threshold inquiry of the relative priority of the competing interests.

      Plaintiffs attempt to distinguish Bucheit by arguing "no question remains to be resolved [in this case] regarding the perfection and priority of any security interests; instead, [this] case involves Plaintiffs, who owned certain property interests, and Stillwater, an interloper with no interest at all in the assets when Plaintiffs' property interests were converted."  Pls.' Resp., at 12 n.8.  However, this distinction is unavailing, for two reasons.  First, accepting this argument leads to the untenable conclusion that any time a debtor takes on an additional creditor, the new creditor would be liable for conversion to any pre-existing creditors simply because he will have necessarily started out with no interest relative to that of the pre-existing creditors.  Such a proposition would turn much the UCC on its head, especially with regard to Article 9, as many of the provisions do not adhere to the first-in-time, first-in-right rule upon which Plaintiffs'

argument is premised.  Second, this precise argument is expressly refuted by Article 9, as illustrated in the following example:

> A owns an item of equipment subject to an unperfected security interest in favor of SP-A.  A sells the equipment to B, who gives value and takes delivery of the equipment ... [with knowledge] of SP-A's security interest and therefore takes the equipment subject to it ... If SP-B perfects its security interest, then, under Section 9-322(a)(2), SP-A's unperfected security interest will be junior to SP-B's perfected security interest.

UCC § 9-325, cmt. 4, exs. 2-3.  It would be completely illogical that SP-B (or Stillwater, in this case) can simultaneously be a senior creditor with the superior interest under the UCC and a tortious "interloper" at common law.

Additionally, the Fallon v. Wall Street Clearing Co. case cited by Plaintiffs is inapposite. Fallon involved a dispute over the transfer of investment securities governed by Article 8 of the UCC.  182 A.D.2d 245 (N.Y. App. Div. 1992).  Under Article 8, the transferee of a warrant only has full unemcumbered rights in the warrant *only if* the transferee is a bona fide purchaser and takes *without any knowledge* of a potentially adverse claim.  Id. at 249; see also UCC § 8-502.  In Fallon, the court held that because defendant transferee knew of plaintiff's rights in the same warrants when defendant accepted them and thus he only obtained the warrants subject to whatever interests plaintiff had, defendant could be liable for conversion and procurement of breach of contract.  Fallon, 182 A.D.2d at 249-50.  The Fallon court made clear that its decision was compelled by Article 8's rules: "[t]his was not – it should be noted – a contest between competing security interests.  Plaintiffs assert not a security interest whose priority vis-a-vis [defendant] is governed by UCC 9-312, but rather a prior contract right of which defendants allegedly had notice."  Id. at 250.  The obvious premise of Fallon is that tort claims of conversion

and tortious interference are permissible so long as they are consistent with the UCC. Therefore, if anything, Fallon actually lends further support to Defendants' position.

Under the facts of this case as alleged by Plaintiffs, no conversion occurred. Stillwater was the more diligent creditor and its interests are superior to those of Plaintiffs. Permitting Plaintiffs, unperfected creditors, to assert a claim of conversion against Stillwater, a perfected creditor with a superior interest, would allow an end run around the UCC's clear priority rules; it would give Plaintiffs a remedy in common law based on a claim for which the UCC statutes have expressly precluded relief. It is not necessary that Article 9 expressly prohibit conversion actions under these circumstances, since it is readily apparent that its provisions impliedly do so.[2] Therefore, Plaintiffs' conversion claim fails as a matter of law.

II.     Tortious Inference (Count III)

Plaintiffs also assert claims against Stillwater and the Broker Defendants for tortious interference. The Moving Defendants seek to dismiss these claims premised on the idea that because Stillwater was merely doing what Article 9 permitted it to do, holding them liable for tortious interference would undermine Article 9's priority rules.

To establish a claim for tortious interference with contractual relations under New York

---

[2] Certainly, it should be clear that it would not be inconsistent with the UCC for a senior creditor to sue a junior creditor for conversion; in such a case, the senior interest holder is not limited to seeking redress under the UCC and the common law claim of conversion works in conjunction with the statutes to buttress the UCC's remedies. See, e.g., Fleet Capital Corp. v. Yamaha Motor Corp., 2002 WL 31174470, *15-17 (S.D.N.Y. Sept. 26, 2002) (senior secured creditor plaintiff may pursue claim of conversion against *junior* creditor defendant where defendant received and retained inventory in which plaintiff had senior secured interest); see also Regions Bank v. Provident Bank, Inc., 345 F.3d 1267, 1275-76 (11th Cir. 2003) (where UCC Article 4A is silent about the role of knowledge, in the situation where the beneficiary bank accepted funds when it knew that the funds were fraudulently obtained, claim for disgorgement based on state law is not precluded "so long as it complied with the provisions of Article 4A").

law, plaintiff must allege (1) the existence of a valid contract between himself and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional procurement of that contract's breach without justification; and (4) damages. Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 424 (1996); Foster v. Churchill, 87 N.Y.2d 744, 749-50 (N.Y. 1996). It is settled law in New York that "[p]rocuring the breach of a contract in the exercise of equal or superior right is acting with just cause or excuse and is justification for what would otherwise be an actionable wrong." Felsen v. Sol Cafe Mfg. Corp., 24 N.Y.2d 682, 687 (N.Y. 1969). A defendant's actions are only tortious if they are wrongful and not "incident to some other lawful purpose." Health-Chem Corp. v. Baker, 915 F.2d 805, 809 (2d Cir. 1990). Actions taken to protect one's economic interest are not actionable unless there is a showing of malice or illegality. Foster, 87 N.Y.2d at 750-51.

The only element in dispute here is whether the Moving Defendants acted with justification. With regard to Stillwater, the Court finds that Article 9 renders it immune from tortious interference liability absent any allegations of illegality or fraud. Here, Stillwater was a creditor to the Flomenhaft Defendants and took an interest in certain debtor assets as collateral. This conduct was not wrongful or improper. In the process of establishing a creditor-debtor relationship, Stillwater furthered its legitimate desire to have a first priority in the collateral for the loan by perfecting its secured interest in accordance with Article 9. As such, Stillwater acted with justification and cannot be liable for tortious interference. This Court has no intention of rewriting the UCC by holding otherwise.[3]

---

[3] In a factually similar case, a bank defendant took a security interest in a debtor's collateral with knowledge that the transaction violated a negative pledge agreement in favor of a competing unsecured financier. First Wyoming Bank v. Mudge, 748 P.2d 713, 716 (Wyo. 1988).

However, the same is not true for the Broker Defendants. That Article 9 renders Stillwater a secured creditor with superior rights over the collateral in question does not provide any justification for a third party to intervene to take advantage of the perceived deficiency of a competing creditor's security interest. The Broker Defendants did not act in the exercise of an equal or superior right to the assets, nor have they identified any legitimate purpose for their actions. In short, while there appears to be a dearth of case law addressing this issue, at this juncture, the Court sees no reason why Plaintiffs' tortious interference claim should not be allowed to proceed against the Broker Defendants. See Madison Third Bldg. Co., LLC v. Berkey, 817 N.Y.S.2d 228, 228-29 (N.Y. App. Div. 2006) (denying motion to dismiss claim of tortious interference against real estate broker defendants where brokers were alleged to have negotiated a lease for owner's lessee to obtain space elsewhere even though they knew there was a valid lease already in place between the owner and lessee). That the relationship with which they allegedly interfered is governed by Article 9 does not insulate the Broker Defendants, as the statutes simply do not address the rights of the third parties whose roles are limited to the brokering of these Article 9 transactions. Nor does the Court see how holding such helpers potentially liable here would undercut or weaken any of Article 9's provisions.

III.   Aiding & Abetting (Count V)

Furthermore, Plaintiffs allege that "Stillwater and the Broker Defendants caused,

---

There, the court held that the bank was liable to the unsecured creditor for tortious interference, even though the UCC provisions in effect clearly rendered the bank's interest superior notwithstanding its knowledge. Id. at 717. This decision has been harshly criticized by Article 9 commentators as an "outrageous" and "unfortunate" example of a court "mangling" the clear UCC priority rules in the name of fairness and equity. 1 Barkley Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 3.14[7]-[8] (rev. ed. 2006).

participated in and aided and abetted the other Defendants in committing the wrongs alleged herein." Although Plaintiffs set forth of their allegations within a single claim for relief, they in fact are alleging a number of separate claims: that the Moving Defendants aided and abetted (1) the Flomenhaft Defendants' breach of fiduciary duties; (2) one another's conversion; and (3) one another's tortious interference.[4]  The Court will address each claim in turn.

In order to state a claim of aiding and abetting a tortious act under New York law, a plaintiff must establish: (1) the principal's or third party's commission of an underlying tort; (2) defendant's knowledge of the violation; and (3) that defendant rendered "substantial assistance or encouragement" to the principal's tortious conduct.  In re Global Serv. Group, LLC, 316 B.R. 451, 462 (Bankr. S.D.N.Y. 2004); Beneficial Commercial Corp. v. Murray Glick Datsun, Inc., 601 F. Supp. 770, 772 (S.D.N.Y. 1985).

Initially, it should be apparent that Plaintiffs' aiding and abetting claims with regard to conversion must fail, as the Court has determined that no conversion occurred.  Similarly, the Broker Defendants cannot be liable for aiding and abetting Stillwater's tortious interference. However, while it appears at first blush to be somewhat counterintuitive to hold Stillwater liable for aiding and abetting another's tortious interference when Stillwater cannot be liable for that same tort as a principal, in the Court's view, aiding and abetting and commission of the underlying tort are nevertheless two distinct causes of action premised on separate legal inquiries, and thus immunity for one does not necessarily confer immunity for the other.  Although it is somewhat difficult to conceptualize how Stillwater "substantially assisted" the Broker

---

[4] These latter two categories may each further be subdivided to two distinct claims, one with Stillwater as aider and the Broker Defendants as principal, and vice versa.

Defendants' tortious interference under the facts of this case, at this early point in the litigation, the Court cannot say that this claim must fail as a matter of law. Plaintiffs should not be precluded the opportunity to attempt to prove this claim.

Finally, as to the alleged aiding and abetting of the Flomenhaft Defendants' breach of fiduciary duty, the Court is sufficiently persuaded that the question of the existence of a fiduciary duty is a fact-specific inquiry generally ill-suited for dismissal at the Rule 12(b)(6) stage. See, e.g., Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006); Boley v. Pineloch Assoc., Ltd., 700 F. Supp. 673, 680-81 (S.D.N.Y. 1988). Therefore, the Moving Defendants' request for the dismissal of this particular aiding and abetting claim will be denied.

IV.   Declaratory Relief (Count VI)

In their Third Amended Complaint, Plaintiffs purport to state a claim for declaratory relief against all Defendants, seeking a number of judicial declarations including, *inter alia*, that (1) the Flomenhaft Interests are "payment intangibles" under Article 9 and thus Plaintiffs' interests in those assets were perfected upon attachment; (2) even if the Interests are "accounts" under Article 9, they were subject to automatic perfection under UCC § 9-309(2); and (3) Plaintiffs' rights are superior to those of Stillwater. Am. Compl., ¶ 70(a)-(d). However, all of these requested declarations[5] have been previously litigated, considered, and expressly rejected by this Court.

It is plain that Plaintiffs do not agree with this Court's characterization of the security

---

[5] Furthermore, insofar as Plaintiffs seek declarations pertaining to the conversion and tortious interference claims, see Am. Compl., ¶ 70(e)-(f), the Third Amended Complaint already contains delineated claims for those causes of action and thus the declaratory relief sought on those grounds are redundant.

11

interests at issue. Nevertheless, disagreement does not give a party license to disregard an otherwise valid judicial order, especially where, as here, the prior order explicitly denied Plaintiffs leave to amend. The statements that this Court has determined to be untrue as a matter of law remain untrue, regardless of to whom the statements or the claims for relief containing the statements are directed. Plaintiffs have offered no colorable explanation for their highly irregular behavior. Therefore, Plaintiffs' claim for declaratory relief will be dismissed once again, and as before, Plaintiffs will not have leave to amend.

V.      "Specific Performance & Injunctive Relief" (Count VIII)

Plaintiffs' Eighth Claim for Relief fails, not necessarily because the underlying tort claims are deficient, but because in the Court's view, "specific performance" and "injunctive relief" are requests for particular types of remedies and not freestanding legal claims. See Black's Law Dictionary (7th ed. 1999) 1407, 788-89 ("[s]pecific performance is an equitable remedy that lies within the court's discretion whenever the common-law remedy is insufficient"; "injunction" is "[a] court order commanding or preventing an action"). Therefore, it is clear that this particular "claim" does not pass Rule 12(b)(6) muster and must be dismissed.

VI.     Conclusion

In conclusion, for the reasons set forth at length above, the instant Motion to Dismiss will be granted in part, and denied in part. An appropriate Order follows.